IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:03-CR-00020-KDB-SCR-1 AND 5:08-CR-00007-KDB-DCK-1

| | |
|---|---|
| USA | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| ANTONIO TORRES GARCIA | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant Antonio Torres Garcia's motion in each case for consideration of compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), the First Step Act of 2018, and for the appointment of counsel. (Doc. Nos. 408 and 22). Having carefully reviewed the Defendant's motion and all other relevant portions of the record, the Court will deny the motion as Defendant has not met his burden to establish that a sentencing reduction is warranted under 18 U.S.C. § 3582(c).

On November 4, 2004, Defendant was found guilty by a jury of conspiracy to possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance. (Doc. No. 290). That same day, Defendant fled and a bench warrant was issued for failure to appear for jury trial. On January 10, 2008, Defendant was arrested in Las Vegas, Nevada. (Doc. No. 339). On March 9, 2009, he was sentenced to 330 months imprisonment plus 5 years of supervised release on the methamphetamine charge (Doc. No. 351) and 30 months imprisonment on the failure to appear charge to run consecutively to the methamphetamine charge for a total of 360 months imprisonment and 5 years of supervised release. (Doc. No. 16).

Defendant is a 55-year-old male serving his prison sentence at USP Canaan in Pennsylvania. His current projected release date is December 3, 2034. Defendant bases his motion

on disparity in sentencing, changes in the law, unusually harsh prison conditions, Amendment 782, COVID-19, his rehabilitation accomplishments, and the fact that he would be deported if released.

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Nonetheless, Congress has provided a few exceptions to this general rule. One such exception is a motion for compassionate release. Before the passage of the First Step Act, district courts were only permitted to reduce a term of imprisonment on motions for compassionate release made by the Director of the Bureau of Prisons (BOP). Now, a court may entertain a motion filed by a defendant. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> (c) Modification of an imposed term of imprisonment.—The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction
> ...
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ....

18 U.S.C. § 3582(c).

Because there have not been any policy statements promulgated by the Sentencing Commission since enactment of the First Step Act,[1] district courts are empowered to consider any extraordinary and compelling reason for release that a defendant may raise. *United States v. McCoy*, 981 F. 3d 271, 282 (4th Cir. 2020). "In analyzing a motion for compassionate release, district courts must determine: (1) whether extraordinary and compelling reasons warrant such a reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582. Only after this analysis may the district court grant the motion if (3) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023) (internal citation omitted) "Thus, even if a movant satisfies the threshold eligibility requirement for obtaining relief, a district court has discretion to grant or deny relief based on its assessment of the salient § 3553(a) factors." *United States v. Bethea*, 54 F. 4th 826, 831 (4th Cir. 2022).

Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with ... training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

## I. Defendant Fails to Present Extraordinary and Compelling Reasons for Compassionate Release or Reduction of Sentence.

A. Sentencing Disparity

---

[1] The Sentencing Commission has proposed an amendment to U.S.S.G. 1B1.13 to address prisoner filed motions for compassionate release that will go into effect on November 1, 2023, absent contrary action by Congress.

Defendant contends that there exists a major disparity in sentencing between the sentence he received and the sentences his co-defendants received. (Doc. No. 408 at 10). Defendant had a base offense level of 38 as he was found responsible for at least 15 kilograms of methamphetamine. (Doc. No. 347, ¶ 34). It was increased 2 levels as evidence indicated that he traded methamphetamine for guns and another 2 levels for failing to appear at his jury trial. *Id.* ¶¶ 35, 38. He did not accept responsibility for his actions and with a criminal history category I, his sentencing guideline range was 360 months to life imprisonment. Defendant received 360 months imprisonment.

Co-defendant Mr. J. Strewsbury had a base offense level of 34 with no enhancements or reductions. He did receive a 3-level decrease for accepting responsibility. With a criminal history category III, his sentencing guideline was 135-168 months imprisonment, and he was sentenced to 135 months.

Co-defendant Mr. D. Strewsbury had a base offense level of 32 with no enhancements or reductions. He did receive a 3-level decrease for accepting responsibility. With a criminal history category IV, his sentencing guideline was 121-151 months imprisonment, and he was sentenced to 121 months.

Co-defendant Mr. Smith had a base offense level of 34 with no enhancements or reductions. He did receive a 3-level decrease for accepting responsibility. With a criminal history I, his sentencing guideline was 120-151 months plus 60 months for having a gun. However, Mr. Smith was granted a departure motion. (Doc. No. 299). The Court sentenced him to 33 months plus 30 months for the firearm for a total of 63 months imprisonment.

Co-defendant Mr. Meadows had a base offense level of 32 with no enhancements or reductions. He did receive a 3-level decrease for accepting responsibility. With a criminal history

I, his sentencing guideline was 120 months plus 60 months for having a firearm. However, Mr. Meadows was granted a downward departure motion. (Doc. No. 248). The Court sentenced him to 60 months plus 36 months for a total of 96 months imprisonment.

Co-defendant Mr. Nunez had a base offense level of 34 with no enhancements or reductions. He did receive a 3-level decrease for accepting responsibility. With a criminal history II, his sentencing guideline was 121-151 months imprisonment. However, Mr. Nunez was granted a downward departure motion. (Doc. No. 196). With the Government's recommendation, the sentencing guideline was 87-108 months imprisonment. *Id*. The Court varied downward and sentenced him to 48 months imprisonment.

Co-defendant Ms. Andrade-Salcedo had a base offense level of 32 with a 2-level upward adjustment for using a child to avoid detection of or apprehension for the offense. She received a 2-level reduction pursuant to USSG §2D1.1(b)(6) as well as a 3-level decrease for accepting responsibility. With a criminal history I, her sentencing guideline was 87-108 months imprisonment. However, Ms. Andrade-Salcedo was granted a downward departure motion. (Doc. No. 274). The Court sentenced her to 30 months imprisonment.

Co-defendant Mr. Jones had a base offense level of 32 and received a 2-level reduction pursuant to USSG §2D1.1(b)(6) as well as a 3-level decrease for accepting responsibility. With a criminal history I, his sentencing guideline was 70-87 months imprisonment. However, Mr. Jones was granted a downward departure motion. (Doc. No. 300). The Court varied downward and sentenced him to 18 months imprisonment.

Co-defendant Mr. Lackey had a base offense level of 32 and received a 2-level reduction pursuant to USSG §2D1.1(b)(6) as well as a 3-level decrease for accepting responsibility. With a

criminal history I, his sentencing guideline was 70-87 months imprisonment. The Court sentenced him to 70 months imprisonment.

Co-defendant Mr. DeFilippo had a base offense level of 28 with no enhancements or reductions. He did receive a 3-level decrease for accepting responsibility. With a criminal history I, his sentencing guideline was 60-71 months imprisonment plus another 60 months imprisonment for the firearm. The Court sentenced him to 60 months plus an additional 60 months for the gun for a total of 120 months imprisonment.

Co-defendant Mr. Watson had a base offense level of 32 with no enhancements or reductions. He did receive a 3-level decrease for accepting responsibility. With a criminal history III, his sentencing guideline was 240 months imprisonment. However, Mr. Watson was granted a downward departure motion. (Doc. No. 273). The Court varied downward and sentenced him to 57 months imprisonment.

Co-defendant Mr. Pitts had a base offense level of 30 with no enhancements or reductions. He did receive a 3-level decrease for accepting responsibility. With a criminal history VI, his sentencing guideline was 130-162 months imprisonment plus an additional 60 months imprisonment for the firearm. However, Mr. Pitts was granted a downward departure motion. (Doc. No. 272). The Court varied downward slightly and sentenced him to 72 months imprisonment plus 24 months imprisonment for the firearm for a total of 96 months.

Co-defendant Mr. Martin had a base offense level of 26 with a 3-level adjustment downward as his role was less culpable than other participants and he appeared to have little knowledge or understanding of the scope and structure of the enterprise. He also received a 3-level decrease for accepting responsibility. With a criminal history III, his sentencing guideline

was 60 months imprisonment. However, Mr. Martin was granted a downward departure motion. (Doc. No. 285). The Court sentenced him to 41 months imprisonment.

Co-defendant Mr. Brendle had a base offense level of 32 with no enhancements or reductions. He received a 3-level decrease for accepting responsibility. With a criminal history III, his sentencing guideline was 120-135 months imprisonment. However, Mr. Brendle was granted a downward departure motion. (Doc. No. 271). The Court varied downward slightly and sentenced him to 78 months imprisonment.

In short, there were sentencing disparities, but none unwarranted.

B.   Change in Law

Defendant argues that changes in the law made by the First Step Act would reduce his sentence if he were sentenced today and that constitutes an extraordinary and compelling reason for compassionate release. Even if the Defendant qualified for the "safety valve" under the First Step Act, the 2-point reduction would have reduced Defendant's total offense level from 42 to 40, and with a criminal history category I, his guideline range would be 292 to 365 months imprisonment and his sentence of 360 months falls within this adjusted range.

Considering the § 3553(a) factors, and in an exercise of its discretion, the Court still firmly believes the 360-month sentence is appropriate. Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with ... training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). Defendant's criminal conduct (a leader of an extensive drug organization and flight from

prosecution) was serious, and there continues to be a need to protect the public from further crimes of Defendant. Also, a reduction in sentence would create an unwarranted sentencing disparity.

      C.      Punitive Effect of COVID-19

Defendant argues that his imprisonment during the COVID-19 pandemic – something not anticipated by the sentencing court – increased his prison sentence's punitive effect and constitutes extraordinary and compelling circumstances that warrant a sentence reduction. "While circumstances that 'undoubtedly increase a prison sentence's punitive effect' may constitute extraordinary and compelling circumstances in some individual cases, *United States v. Kibble*, 992 F.3d 326, 336 (4th Cir. 2021) (Gregory, J., concurring), if every defendant who experiences hardship during incarceration is entitled to a finding of extraordinary and compelling circumstances, compassionate release would become the 'exception that swallows the general rule of finality'. *United States v. Hancock*, No. 1:06-CR-206-2, 2021 U.S. Dist. LEXIS 41526, 2021 WL 848708, at *5 (M.D.N.C. Mar. 5, 2021)." *United States v. Chavis,* No. 1:18-CR-481-3, 2021 U.S. Dist. LEXIS 124143, at *8-9 (M.D.N.C. July 2, 2021). Moreover, the "hardships" that Defendant claims to have experienced in prison during the COVID-19 pandemic are not particular to Defendant. Many inmates, as well as non-incarcerated individuals, have been infected with the COVID-19 virus and survived (or feared being infected with the virus), lost close relatives or friends due to the pandemic, and endured isolation, limits on movement, and other restrictive protocols during the pandemic. *See United States v. Murry*, F.Supp.3d 615, (E.D. Va. 2021); *United States v. Burks,* No.3:14-CR-208-MOC-1, 2021 U.S. Dist. LEXIS 70934, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021). Thus, Defendant's incarceration during the pandemic does not constitute "extraordinary and compelling" reasons warranting early release.

      D.      Amendment 782

Defendant claims that application of Amendment 782 would reduce his sentence, but he is mistaken. Due to the high drug amount of methamphetamine in this case, over 141 kilograms, Amendment 782 provides no change in the sentencing guidelines. This was addressed in the Order filed on February 3, 2016. (Doc. No. 378) and does not need readdressing here.

E. COVID-19

Defendant claims that because of his age he is at an increased risk of severe and potentially fatal complications if he contracted COVID-19. (Doc. No. 408 at 19). However, according to the information provided by Defendant, he tested negative for COVID-19 on August 27, 2020, and provides no further update. (Doc. No. 408, Exhibit 2, at 4). Defendant does not present any medical evidence that he is particularly at risk from COVID-19. Also, thankfully COVID-19 is not the threat it once was, as there is no inmate nor staff currently at USP Canaan that is diagnosed with COVID-19. According to the Bureau of Prison's (BOP) website, at USP Canaan there have been no inmate deaths and no staff deaths, while 351 inmates have recovered and 226 staff have recovered. Additionally, 209 staff have been fully inoculated and 1,301 inmates have been fully inoculated, which appears to be the entire inmate population. The Centers for Disease Control and Prevention (CDC) have evaluated the COVID-19 virus and explained that vaccines "continue to be highly effective at preventing hospitalizations and death." CDC, *Benefits of Getting a COVID-19 Vaccine*, www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html. The CDC also notes that vaccines currently available in the United States have been shown to be "highly effective" at preventing COVID-19.

F. Deportation

The Defendant contends that he will be deported to Mexico when he is released so he does not pose a threat to anyone in the United States. (Doc. No. 408 at 18). Although at sentencing the

Court included language of possible deportation, it also stated that should deportation not occur, the Defendant was to report in person within 72 hours of release to the probation office in the district to which he is released. (Doc. No. 381 at 71-72). Defendant's Presentence Investigation Report states that according to records obtained from the Bureau of Immigration and Customs Enforcement, Defendant became a permanent legal resident of the United States on or about June 6, 2000. (Doc. No. 347, ¶ 60). Thus, it appears Defendant may not be deported and still poses a threat to persons in the United States.

The Court finds that none of Defendant's stated reasons, individually or in combination, constitute an extraordinary and compelling reason for a reduction in sentence.

## II.     Section 3553(a) Factors Weigh Against a Reduction in Sentence.

During his time of incarceration, Defendant earned his GED and has very sporadically taken various classes and performed some work assignments as detailed in his motion and confirmed by the United States Probation Office. (Doc. No. 408, Exhibit 2 at 4, 5). His efforts at rehabilitation do not outweigh the other Section 3553(a) factors and the danger he poses to society. Defendant's offense conduct was serious, presenting a danger to the public by involving large amounts of methamphetamine. He also escaped before trial and later escaped again from prison. (Doc. No. 377 at 2). The nature and circumstances of Defendant's offense, the Defendant's history and characteristics, the need for deterrence, the need to protect the public, and the need for just punishment also weigh against any sentence reduction for the Defendant.

Defendant asks the Court to appoint him counsel to assist him with his request for a compassionate release. However, "a criminal defendant has no right to counsel beyond his first appeal." *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 756 (1991). "Though in some exceptional cases due process does

mandate the appointment of counsel for certain postconviction proceedings," the defendant has not presented a showing of such exceptional circumstances in this case. *Legree*, 205 F.3d at 730 (internal citation omitted). The Court finds that the interests of justice do not require appointment of counsel to assist the Defendant.

**IT IS, THEREFORE, ORDERED**, that the Defendant's duplicate motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 (Doc. Nos. 408 and 22), are **DENIED.**

**SO ORDERED.**

Signed: October 17, 2023

Kenneth D. Bell
United States District Judge